**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 11-cv-02478-REB

LACY A. ESTES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER REVERSING DISABILITY DECISION**
**AND DIRECTING AWARD OF BENEFITS**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed September 21, 2011, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of depression with anxiety, a tear of the medial meniscus of her left knee, and obesity. After her applications for disability

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.  This hearing was held on January 13, 2011.  At the time of the hearing, plaintiff was 45 years old.  She has a high school general equivalency diploma and past relevant work experience as a home healthcare provider.  She has not engaged in substantial gainful activity since her amended alleged date of onset, June 15, 2009.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established that plaintiff suffered from severe physical and mental impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform unskilled, light work with various exertional and non-exertional restrictions.  Although these limitations precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that were within his residual functional capacity.  He therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social

Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step, sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

## III.  LEGAL ANALYSIS

Plaintiff posits a number of intertwined ways in which, she contends, the ALJ erred in concluding that she was not disabled.  I find one not only dispositive, but sufficient to direct an award of benefits in plaintiff's favor, and therefore do not consider the others.

Plaintiff's primary argument is that the ALJ erred in failing to properly assess her mental residual functional capacity, and more precisely, her ability to deal with the general public.[2]  The record contains four opinions that bore on this determination: (1) treating source Nicholas Rodriguez, LCSW (Tr. 216-221); (2) examining psychologist Jose Vega (Tr. 170-176, 279-285); (3) examining psychiatrist Margaret McKinney (Tr. 165-168); and (4) non-examining psychiatrist Mary Ann Wharry (Tr. 193-195).  The ALJ suggested that "[t]he opinions provided by the[se] mental health providers vary widely." (Tr. 21.)  Yet, with respect to one critical issue, the medical sources were in perfect harmony: Plaintiff could not be expected to be able to perform any job that requires contact with the general public.  (*See* Tr. 168, 172, 195, 217, 220.)

The ALJ apparently attempted to account for this evidence by including within plaintiff's mental residual functional capacity a limitation that her "contact with crowds should not be frequent or prolonged."  (Tr. 18.)  Although both plaintiff's testimony and the evidence of record support a conclusion that plaintiff could not deal with crowds of people (*see* Tr. 23), the ALJ's determination to discredit the broader conclusion of the medical sources that she could not deal with the general public at all does not bear

---

[2] Plaintiff does not contest the ALJ's determination of her physical impairments or the exertional limitations incorporated into his physical residual functional capacity assessment.

scrutiny.

In rejecting the opinion of Mr. Rodriguez, the ALJ noted, *inter alia*,[3] that plaintiff's activities of daily living – specifically her ability to care for her personal needs, use public transportation, shop for clothes and groceries, care for her grandson, and go fishing for her birthday – did not support the severity of limitations suggested.  (Tr. 22.)  This was error.  Although such activities can inform the disability decision, they do not always translate well into a determination of what the claimant can do on a sustained basis in the workplace.  **See Thompson v. Sullivan**, 987 F.2d 1482, 1490 (10th Cir. 1993); **see also Draper v. Barnhart**, 425 F.3d 1127, 1131 (8th Cir. 2005).  The ALJ considered this more relevant question not at all.

The ability to care for one's own personal needs has little translation to the competitive work environment, and thus is unilluminating in and of itself.  More importantly, when mental impairments are at issue, the Commissioner has specifically

---

[3]  The ALJ also rejected Mr. Rodriguez on the basis that he was not an "acceptable medical source." (Tr. 21.) This factor, standing alone, is not sufficient to allow the Commissioner to ignore the opinion of such a source. Although this designation prevents Mr. Rodriguez from being considered a "treating source," whose opinion might be entitled to controlling (i.e., determinative) weight if otherwise well supported by the record, *see Weaver v. Astrue*, 2009 WL 3838280 at *3 (10th Cir. Nov 18, 2009); *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007), the Commissioner has recently recognized that given the realities of modern-day managed healthcare,

> medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

**Social Security Ruling** 06-03p, 2006 WL 2329939 at *3 (SSA Aug. 9, 2006). Opinions of such sources still must be considered, applying the same factors as are generally used to assess treating source opinions.  *Id.* at *4; *see also Frantz*, 509 F.3d at 1302.

recognized that a claimant may still be markedly limited in this area, even if she has a wide range of activities of daily living, if she cannot perform such activities without direct supervision or "on a consistent, useful, routine basis, or without undue interruptions or distractions." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00C(1).  **See also id.**, § 12.00F ("Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychological factors such as placement in . . . highly structured and supportive settings [such as] may . . . be found in your home.").  Thus, the fact that plaintiff can be around her family or care for her grandchild bears little correlation to her ability *vel non* to interact appropriately with strangers.  Likewise, the ability to be *present* around others, such as when riding a bus or shopping, is not the same as the ability to actually *interact* with them.  In fact, the medical evidence of record consistently indicated that plaintiff lives alone, tends to isolate herself, and has minimal hobbies that do not require her to interact with others outside a limited universe of family and close friends.  (**See, e.g.**, Tr. 166, 167, 172, 280.)

The ALJ's decision to give "partial weight" to the opinions of Drs. Vega and McKinney (Tr. 22), and "some weight" to that of Dr. Wharry does not directly address these medical sources' suggested limitations on plaintiff's ability to interact with the general public and is, frankly, perplexing.  Dr. Vega opined that plaintiff would have "marked" to "extreme" difficulties in all aspects of social interaction in the workplace, including the ability to interact appropriately with the general public.  (Tr. 285.)[4]  Yet the ALJ glossed over these conclusions without comment.  Even more egregious, the ALJ's

---

[4] This opinion also was consistent with the of Mr. Rodriguez.  (**See** Tr. 217.)

suggestion that Dr. McKinney's opined that plaintiff "could relate to others for work purposes" (Tr. 23), conveniently ignores the critical, concomitant qualification: that plaintiff "should not be expected to deal with the general public." (Tr. 168.) Dr. Wharry likewise stated that plaintiff should have no interaction with the general public (Tr. 195), but the ALJ's bare-bones discussion of this opinion, which fails to specify which of Dr. Wharry's limitations were adopted and which were not, is impossible to review (*see* Tr. 23).

Nor is the ALJ's failure to discuss the issue harmless. The only job the ALJ found to be compatible with plaintiff's limitations was that of parking lot attendant. (Tr. 24.) Yet the vocational expert who testified at the hearing acknowledged that if plaintiff could have no interaction with the general public, the job of parking lot attendant would no longer be within her residual functional capacity. (Tr. 41-42.) The Commissioner therefore failed to carry his burden of proof at step 5, and the disability decision consequently cannot stand.

Plaintiff asks the court to forgo remand and direct the Commissioner to award her benefits. I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard. **See Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993). Although the determination of residual functional capacity is an administrative determination reserved to the Commissioner, 20 C.F.R. §§ 404.1546 & 416.946; **Rutledge v. Apfel**, 230 F.3d 1172, 1175 (10th Cir. 2000), that determination must be grounded in some medical evidence, **see Anderson v. Shalala**, 51 F.3d 777, 779 (8th Cir. 1995). All the medical source statements of record support the conclusion

that plaintiff cannot interact with the general public. The factors on which the ALJ relied to find otherwise are not supported by substantial evidence. Under these circumstances, I conclude that a remand would serve only to further delay an award of benefits to which plaintiff is clearly entitled.

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That judgment **SHALL ENTER** in favor of plaintiff and against the Commissioner;

3. That the Commissioner is **DIRECTED** to award plaintiff benefits from her alleged date of onset; and

4. That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated March 25, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge